**MARIMPEX MINERALÖL–HANDELS GESELLSCHAFT MBH. & CO., KG, Plaintiff,**

v.

**GOOD HOPE INDUSTRIES, INC., Defendant.**

**Civ. A. No. 78–397–C.**

United States District Court, D. Massachusetts.

May 16, 1980.

Laurence J. Hoch, Hoch, Flanagan & Snyder, Boston, Mass., for plaintiff.

Leo F. Glynn, Glynn & Dempsey, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action for breach of contract filed in this Court on the basis of diversity jurisdiction. The plaintiff is a foreign corporation with a principal place of business in Hamburg, West Germany. Defendant is a Massachusetts corporation with a principal place of business in Springfield, Massachusetts. The matter in controversy exceeds $10,000 as plaintiff herein seeks recovery of a sum in excess of $200,000.

The case came before the Court for a two day nonjury trial and thereafter the parties filed requests for findings of fact, conclusions of law, and memoranda in support of their various positions.

After trial, I find that the parties entered into a valid written contract on September 14, 1977. That contract called for the delivery of approximately 60–70,000 metric tons of gasoline, which gasoline was to be produced by Rumanian oil fields and loaded at Constanza, a loading port located in Rumania. The contract price was to be 36¢ a gallon and the contract specifically provided that the inspection of the gasoline for quality was to be done at Constanza by Saybolt-Van Duyn of Rotterdam. The contract further provided that the results of the inspection by Saybolt-Van Duyn were binding on both parties. Plaintiff concedes that defendant has paid 95% of the amount due to it under the contract and the issue to be resolved herein is whether or not defendant is liable for the remaining 5% of the contract price.

The record establishes that the gasoline called for by the contract was shipped by two different vessels, the T/V ATHEL MONARCH which left Constanza on October 2, 1977 and the M/V PRINCIPOS which left Constanza on October 26, 1977. Defendant accepted the cargo aboard the T/V ATHEL MONARCH and there is no issue between the parties with respect to that portion of the contract. The instant controversy arises from defendant's contention that the gasoline delivered to it from the M/V PRINCIPOS was contaminated by the presence of methanol and water. The cargo aboard the M/V PRINCIPOS was inspected by Saybolt-Van Duyn on October 7, 1977 when it performed its usual testing procedures by drawing and sealing two separate samples from the shoretanks.

At Constanza, from which the cargo was unloaded onto the M/V PRINCIPOS, the testing established that the cargo met the requirements of the contract, and it was silent as to the presence or absence of methanol because the specific test for methanol was not provided for in the contract between the parties. Saybolt-Van Duyn performed a second test on September 28, 1978 on the second set of samples which had been drawn by its representatives on October 7, 1977. This time Saybolt-Van Duyn tested specifically for the presence of methanol or any other kind of alcohol in the sample and the results were negative for either methanol or alcohol.

The M/V PRINCIPOS delivered 12,353,-124 gallons which was paid for by defendant, save for the final 5% as indicated above; 5% of the contract price for this quantity is $222,356.23. This sum was due to plaintiff under the terms of the contract no later than November 28, 1977 but at no time to date has that amount been paid to plaintiff by defendant.

Defendant has offered evidence tending to show that when it delivered a portion of the gasoline from the M/V PRINCIPOS to its customers who operated filling stations, the customers rejected the proffered gasoline because of contamination consisting of either water or methanol. Assuming for purposes of this case that there was either water or methanol in the gasoline when tendered by defendant to its gas-

oline station operating customers, I find that defendant has failed to sustain its burden of establishing that these contaminants were in the gasoline prior to its being offloaded from the M/V PRINCIPOS and, accordingly, I rule that plaintiff is not responsible for the presence of such contaminants and is entitled to recover the balance due to it under the contract.

 There is an additional matter in controversy, an item of $61,606.81 for lighterage which on the evidence plaintiff agreed to pay for provided that the defendant deliver to plaintiff the underlying documents which established and substantiated those lighterage expenses. I find that defendant has failed to perform the condition precedent to plaintiff's liability for lighterage in that at no time since the off-loading to date has the defendant ever delivered either cancelled checks or paid invoices for the lighterage to plaintiff. Accordingly I rule that defendant is not entitled to a credit of $61,306.81 for the lighterage.

Order accordingly.